

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-3-2009

# Lisa St.Jean v. Department of Homela

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3308

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

## Recommended Citation

"Lisa St.Jean v. Department of Homela" (2009). *2009 Decisions.* Paper 1243.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1243

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

———————

No. 08-3308

———————

LISA ANICK ST. JEAN,

               Appellant

v.

DEPARTMENT OF HOMELAND
SECURITY U.S. CITIZENSHIP
AND IMMIGRATION SERVICES;
MARIA ARAN, DISTRICT DIRECTOR
OF THE U.S. CITIZENSHIP AND
IMMIGRATION SERVICES; U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT
ST. CROIX DISTRICT;
ATTORNEY GENERAL MICHAEL B. MUKASEY
(Pursuant to Fed. R. App. P. 43(c))

———————

On Appeal from the United States District Court
for the District of the Virgin Islands
(D.C. Civil No. 1-07-cv-00102)
District Judge: Hon. Raymond L. Finch

———————

Submitted Under Third Circuit LAR 34.1(A)
April 23, 2009

BEFORE: BARRY, HARDIMAN and COWEN, <u>Circuit Judges</u>

(Filed: June 3, 2009)

OPINION

COWEN, Circuit Judge

Appellant Lisa Anick St. Jean appeals from the dismissal of her complaint by the District Court of the Virgin Islands. We will affirm.

I.

St. Jean, who was born on March 19, 1987, is a native of Dominica and a citizen of France. She first entered the United States as a minor on October 20, 2002, pursuant to the Visa Waiver Program ("VWP"). The VWP was established by Congress to promote better relations with American allies and to facilitate travel between countries with low incidences of immigration abuse. It provides for a simplified and expedited admission process by allowing the qualified alien to enter the United States without having to obtain a nonimmigrant visa. On the other hand, the alien must also agree to waive any right "to contest, other than on the basis of an application for asylum, any action for removal." 8 U.S.C. § 1187(b)(2).

It appears undisputed that, although she was only authorized to stay until January 19, 2003, St. Jean remained in the United States. Her unauthorized presence was evidently discovered by immigration authorities at a St. Thomas airport, and a Notice to Appear was eventually filed on March 4, 2005. St. Jean's stepfather filed a Form I-130 Petition for Alien Relative, and St. Jean submitted a Form I-485 Application to Register

2

Permanent Resident or Adjust Status. Both documents were allegedly filed on November 25, 2005 on the advice of a so-called "Immigration Fixer." Because of her VWP waiver, the Immigration Judge ultimately terminated the removal proceedings as improvidently begun on August 30, 2006.

According to St. Jean, her counsel negotiated an agreement for voluntary departure with United States Immigration and Customs Enforcement ("ICE") Agent David Levering following consultations with ICE Chief Counsel Crimilda Guilloty. It appears that St. Jean's attorney addressed the issue of voluntary departure eligibility in a June 30, 2006 letter to Guilloty. Pursuant to this purported agreement, St. Jean was allegedly permitted to depart the country voluntarily using her own resources. In fact, she did leave the United States on November 4, 2006, with ICE Agent Dennis Carter witnessing her alleged voluntary departure.

The record submitted to this Court by the parties contains no written voluntary departure agreement. It appears that any alleged agreement here, if it ever existed, was oral in nature. In fact, the record does contain an ICE "Order of Deportation," signed by Carter and dated September 28, 2006 ("September 2006 Order of Deportation"). According to St. Jean, she properly departed the country pursuant to a binding voluntary departure agreement, and this inaccurate Order of Deportation was secretly created and placed in her immigration file by deception and fraud. In particular, she states in her appellate brief that the document was actually entered on the record *after* her November

3

4, 2006 departure and that Levering informed her attorney that his superiors instructed him to make this entry.

On the other hand, the record on appeal includes a number of other documents related to the 2006 departure (or removal), namely: (1) a September 28, 2006 Notice of Intent to Deport for Violating the Terms of Your Admission Under Section 217 of the Immigration and Nationality Act; (2) a Warrant, authorizing any ICE officer to take St. Jean into custody and deport her; (3) an October 27, 2006 Form I-205 Warrant of Removal/Deportation; (4) a Form I-294 Warning to Alien Ordered Removed or Deported dated October 30, 2006; and (5) an "Official Detail" form verifying issuance of the I-294 Warning as well as St. Jean's departure. Among other things, the I-294 Warning provided St. Jean notice that she was prohibited from entering, attempting to enter, or being in the United States for a 5-year period.

On May 31, 2007, St. Jean returned to the United States. According to St. Jean, she applied for re-entry in order to attend the funeral of her brother who was killed in St. Thomas on May 26, 2007. Respondents contend that she was improperly admitted under the VWP. In any event, the parties appear to agree that St. Jean was admitted for a 90-day period, which expired on August 29, 2007.

St. Jean was interviewed by an adjudications officer from United States Citizenship and Immigration Services ("USCIS") soon after her return. The officer informed her attorney that his client's adjustment of status petition would be denied

because she had been previously deported. It was allegedly at this time that St. Jean and her counsel learned about the September 2006 Order of Deportation contained in her immigration file. Following additional correspondence, her counsel initiated the present action in the District Court on August 23, 2007.

In her "Verified Petition," St. Jean named as Respondents the following: (1) the Department of Homeland Security; (2) USCIS District Director Maria Aran; (3) ICE District Director Manuel Oyola Torres; and (4) then-Attorney General Alberto Gonzales. St. Jean characterized her case as:

> an action for declaratory relief to determine the rights and obligations of the parties based on the fact that the record of Petitioner's deportation is inaccurate, as the procedure for deportation was unlawful; for injunctive relief in restraining the Respondents from forcing the Petitioner to leave the United States; and for a Writ of Mandamus commanding the Respondents to correct the inaccuracy in Petitioner's file to comply with the agreement reached with the Petitioner and to adjust the status of the Petitioner while she is present in the United States

(JA10-JA11.) She alleged that Levering "has since been terminated as an agent of [ICE] because of improper conduct over the years," and her pleading referred to the then-pending I-130 Petition and I-485 Application. (JA13.) St. Jean also moved for a temporary restraining order as well as a preliminary injunction.

USCIS denied the I-130 Petition on May 20, 2008 because the stepfather had married St. Jean's mother *after* St. Jean had already turned 18. The agency likewise denied the I-485 Application submitted by St. Jean because of its rejection of her stepfather's filing on her behalf. On May 23, 2008, ICE issued an Order of Deportation

5

pursuant to the VWP program, together with a Notice of Intent and a Warrant.

The District Court eventually heard oral argument on June 18, 2008. On June 19, 2008, St. Jean's counsel informed an ICE agent of his client's desire to self-remove on the very same day, requesting that an agent verify her departure and serve the standard warnings. An agent accordingly met St. Jean at a St. Croix airport, served her with the Form I-296 Notice to Alien Ordered Removed/Departure Verification, and witnessed her leaving the country. On June 24, 2008, St. Jean filed a counseled petition for review with respect to her 2008 removal. Saint Jean v. Attorney General, C.A. No. 08-2856. However, this Court granted the government's motion to dismiss the petition as untimely on August 7, 2008.

On July 23, 2008, the District Court likewise granted Respondents' motion to dismiss. St. Jean then filed a timely notice of appeal.

II.

This Court agrees with the District Court that the Verified Petition had to be dismissed. However, we do so based on different grounds than those expressly offered by the District Court. See, e.g., Nicini v. Morra, 212 F.3d 798, 805 (3d Cir. 2000) (stating that Court may affirm on any ground supported by record). Simply put, we will affirm because St. Jean's whole "voluntary departure" theory lacks any factual merit whatsoever.

As Respondents point out, the record here contains extensive documentation demonstrating that St. Jean was in fact deported or removed in 2006. Initially, there is the

6

September 2006 Order of Deportation itself. While St. Jean has vigorously attacked this Order of Deportation as a fraudulent document created after she left the country, other documents in the record confirm its existence and legitimacy. For her part, St. Jean has not contested the existence or legitimacy of this additional documentation. In fact, her appellate brief refers to a Notice of Intent, which actually had the same date as the supposedly "fraudulent" September 2006 Order of Deportation. The Notice of Intent expressly informed her that "ICE has entered an order that you be deported and removed from the United States." (JA186 (emphasis omitted).) Her brief also references an I-205 Warrant, which stated that St. Jean was subject to removal or deportation based on a final order by a district director or his or her designee. Handwritten language on the I-205 Warrant indicated that the document itself was executed on November 6, 2006, further noting that St. Jean was not in custody at the time, was allowed to purchase her own ticket, and then left on a flight to Guadeloupe.[1] Finally, the record contains another Warrant as well as an I-294 Warning.

---

[1] The I-205 Warrant admittedly contained a box next to the following line: "If self-removal (self-deportation), pursuant to 8 C.F.R. 241.7, check here." (JA190.) This box was not checked. Nevertheless, this part of the document was below a section dealing with instances where the "actual departure is not witnessed" and then above a departure verification signature line. (JA190.) Neither this signature line nor the previous section was filled in by an ICE agent. However, the agent did sign the document elsewhere and, as previously noted, specifically described the manner in which St. Jean left the country. In any case, the omission of any check mark in this box fails to indicate a *voluntary departure* on November 6, 2006, and the I-205 Warrant itself still shows the execution in some manner of a final removal order on that date.

7

As Respondents point out, the notion of voluntary departure appears to be at odds with the underlying purposes of the VWP program itself. Under this special program, an alien gets the benefit of expedited admission without a visa in exchange for waiving his or her rights to contest any action for removal. One would therefore expect, at the very least, a written agreement for voluntary departure in the case of a VWP alien who overstayed her authorized period. But St. Jean does not point to any written agreement. At best, she has alleged a purely and rather unspecified oral agreement with a lower-ranking government agent. Such allegations are clearly insufficient.

## III.

For the foregoing reasons, we will affirm the District Court's decision.